UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TERAZZE TAYLOR, | CASE NO. 3:21-cv-05224-RJB |
| Plaintiff, | |
| v. | ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| WASHINGTON DEPT. OF CORRECTIONS, ALYSSA KEKOA-OSHIRO, JACQUELINE NELSON, DAVID SATHERS, JEFF KINNE, DANIELLE ARMBRUSTER, STEPHEN SINCLAIRE, MAURO PARTIDA, GWIN PENSROSE, | |
| Defendants. | |

This matter comes before the Court on the Defendants' Motion for Summary Judgment (Dkt. 56) and the Plaintiff's Motion for Leave to File Surreply (Dkt. 90). The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

In this case, the Plaintiff, *pro se,* asserts that the Defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution in connection with his court mandated supervised release following felony convictions. Dkt. 9. He also refers to "HIPPA,"

which should be construed as the federal Health Insurance Portability and Accountability Act ("HIPPA"). *Id.* The Plaintiff makes claims under state law for "fraudulent representation" and gross negligence. *Id.* He also refers to false arrest and "wrongful forfeiture of bail." *Id.*

The Defendants now file a motion for summary judgment (Dkt. 56) the Plaintiff filed a response (Dkt. 66) and a supplemental response (Dkt. 86) (titled "Plaintiff's Motion for Summary Judgment" and then a few lines later as a "Supplemental Brief in Opposition to Summary Judgment;" the Plaintiff does not argue for summary judgment in this pleading so it will be construed as a response), the Defendants filed a reply (Dkt. 89) and the Plaintiff filed a surreply (Dkt. 91)(titled "Plaintiff's Motion for Summary Judgment" and then a few lines later as a "Plaintiff's Surreply in Opposition to Summary Judgment"). In the interest of considering all argument, the Plaintiff's Motion for Leave to File Surreply (Dkt. 90) should be granted. Each of the above pleadings were considered. For the reasons provided below, the Defendants' motion for summary judgment (Dkt. 56) should be granted as to the federal claims and renoted as to the state claims.

## <u>MOTIONS FOR JUDICIAL NOTICE</u>

Pursuant to Federal Rule of Evidence 201(b): "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Under Fed. R. Evid. 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action."

The Defendants ask this Court to take judicial notice of certain of the Plaintiff's criminal convictions and the terms of his supervised release which are contained in court orders that are

publicly available.  Dkt. 56.  The Plaintiff argues that those documents are not relevant and should not be considered.  Dkt. 66.

The Defendants' motion that the Court take judicial notice of the various court orders (Dkt. 56) should be granted.  Documents like the Plaintiff's February 13, 2012 Judgment in a Criminal Case filed in this court, (found at *U.S. v. Taylor*, U.S. District Court for the Western Dist. of Washington case number 12-0195 JLR (Dkt. 231)), and an October 13, 2017 King County, Washington Superior Court Judgment and Sentence (case number 17-1-0377-4 KNT filed in this case at Dkt. 56 at 29-41) are readily determined from court records.  Further, they are relevant to the claims and defenses raised here.

The Plaintiff moves the Court to take judicial notice of (1) "Washington State Court Records documenting the (wrongful) arrest of the Plaintiff complained of as well as subsequent dismissal of same/favorable termination," (2) Plaintiff's pleadings "declarations and affidavits" and (3) Defendants' pleadings "admissions and lack of substantive denials."  Dkt. 92.

The Plaintiff's motion (Dkt. 92) should be granted as to the Washington State Court records that have been filed in the case.  The Plaintiff's motion for Court to take judicial notice of other pleadings filed by the Plaintiff and the Defendants (Dkt. 92) should be denied.  There is no showing that these pleadings (other than state court records) are proper subjects for judicial notice.

## I.  <u>RELEVANT FACTS AND PROCEDURAL HISTORY</u>

The Plaintiff's Amended Complaint and various pleadings are extraordinarily difficult to understand.  His contacts with the Defendants and the federal and state courts (including Pierce, King, Franklin, and Benton Counties) create a dizzying morass of criminal charges, domestic violence no contact orders involving Tyona O'Cain, Nadette Lewis-Taylor (his ex-wife) and

others, divorce proceedings, and violations of his federal and state community supervision proceedings.  This opinion will not attempt to set out all these proceedings.  In his Amended Complaint, he makes sweeping allegations and generalized claims against all Defendants without providing an explanation of which claims apply to which Defendant.  He includes several other allegations against people and entities not listed as defendants.  As a *pro se* party, the Court will afford the Plaintiff the benefit of any doubt in attempting to ascertaining what claims he raised in the Amended Complaint against which party.  *Alvarez v. Hill,* 518 F.3d 1152, 1158 (9th Cir. 2008).

## A.  FACTS

In February of 2013, the Plaintiff pleaded guilty to two felonies (conspiracy to defraud the government and false claim) and was sentenced to 24 months of confinement and 36 months of supervised release.  *U.S. v. Taylor*, U.S. District Court for the Western Dist. of Washington case number 12-0195 JLR, Dkt. 231 at 2-3.  As a condition of his supervised release the Plaintiff was ordered to avoid committing another federal, state, or local crime.  *Id.*  While he was on supervised release for these federal charges, the Plaintiff was charged with felony domestic violence and cyberstalking.  *U.S. v. Taylor*, U.S. District Court for the Western Dist. of Washington case number 12-0195 JLR, Dkt. 473.  The Plaintiff was eventually found to have violated the terms of his federal supervised release and was ordered to serve six months in custody on November 27, 2017.  *U.S. v. Taylor*, U.S. District Court for the Western Dist. of Washington case number 12-0195 JLR, Dkt. 476.

After his felony convictions of domestic violence and cyberstalking in King County, Washington Superior Court, on October 13, 2017, the Plaintiff was also sentenced to 30 months of confinement and 30 months of supervised community custody.  *Washington v. Taylor,* King

County, Washington Superior Court case number 17-1-00377-4 KNT, filed here at Dkt. 56 at 29-41.  During his term of state community custody, the Plaintiff was ordered to "comply with the instructions, rules and regulations promulgated by the Department [of Corrections], ("DOC")" to "perform affirmative acts necessary to monitor compliance," and "obey all laws."  *Id.* at 32.  He was ordered to report and be available for contact, as directed, to his community corrections officer.  *Id.* at 33 and 38.  The Plaintiff was also ordered to "[r]ecieve prior approval for living arrangements and residence location," not "own, use, or possess a firearm," and "[r]emain within geographic boundaries as set forth in writing by the [DOC] Officer or as set forth with the [Stay Out of Drug Areas "SODA"] order."  *Id.* at 38.  The Plaintiff was also ordered to have no contact with his victims, Tyona O'Cain, Richard Beckert and Terrance Williams.  *Id.*

The Plaintiff began to serve his 30-month state court sentence in October of 2017.  Dkt. 61.  While he was in custody, in July of 2018, he states he arranged to purchase a home and so had a lawyer come to the prison so that he could sign the paperwork.  Dkt. 66-1 at 19.  After he applied for permission for a lawyer to visit, on July 17, 2018, lawyer Patrick McBurney came to the prison with documents related to closing on the house rather than power of attorney documents which were the documents that the prison had approved for his signature.  Dkt. 61 at 2.  Defendant Mauro Partida states that he informed the Plaintiff and Mr. McBurney that Mr. McBurney would have to return after approval for the Plaintiff to sign documents related to the house closing was obtained.  Dkt. 61 at 2.  The Plaintiff contends that Defendant Partida "aggressively bombarded" the Plaintiff's and his lawyer's meeting.  Dkt. 66-1.  Approval was obtained and the Plaintiff signed the documents days later to purchase a house in Pierce County, Washington.  Dkt. 61 at 2.

The Plaintiff became eligible for early release with an Earned Release Date of September 26, 2018. Dkt. 62 at 2. Under DOC policy 350.200, offenders who will be on supervised community custody (like the Plaintiff) will only be released early if there is an approved release address in place; early release plans must consider victim and community safety. DOC policy 350.200, filed in the record at Dkt. 62 at 19-43. The Plaintiff applied to be released to his Pierce County, Washington home. Dkt. 66-1 at 19. DOC Community Corrections Officer ("CCO") David Beeman, who is not a Defendant here, states that around September 4, 2019, he received a call from the Plaintiff's then wife, Nadette Lewis-Taylor. Dkt. 62 at 3. He states that Mrs. Lewis-Taylor stated that she did not feel safe having the Plaintiff move into the home and that he had made threatening statements to her. *Id.* A follow-up call with Mrs. Lewis-Taylor, the Plaintiff and his counselors was scheduled during which Mrs. Lewis-Taylor did not change her mind. *Id.* The Plaintiff's proposed release plan was denied. *Id.* In any event, CCO Beeman and his supervisors determined that because of the no contact orders in King County and Mrs. Lewis-Taylor's concerns, the Plaintiff was released to Snohomish County. Dkt. 62 at 3. The Plaintiff points out that Mrs. Lewis-Taylor later changed her mind. Dkt. 66-1 at 19. He also points to various statements by her that she suffers from mental illnesses and that she felt "threatened, coerced and manipulated" into making statements against him and "did not want to be a part of a plot to sabotage" him. *Id.*

In any event, on January 29, 2019, the Plaintiff was released from state prison and began his term of state supervised community custody. Dkt. 57 at 5-8. Defendant Alyssa Kekoa-Oshiro was assigned to be his CCO. Dkt. 57. His supervision was filled with numerous violations and arrests. Dkt. 57 at 2-4.

For example, according to CCO Kekoa-Oshiro, on February 14, 2019, she was notified that the Pierce County Sheriff's Office had probable cause to arrest the Plaintiff for violating a non-contact order between him and his wife, Nadette Lewis-Taylor.  Dkt. 57 at 2.  She reached out to the Plaintiff and told him to report to her office the next morning.  *Id.*  She states that he told her he was in King County (where he was restricted from traveling to without permission).  *Id.*  He indicated that he was in a hospital there; she states that she directed him to report to her office the next morning.  *Id.*  The Plaintiff failed to report as directed.  *Id.*  According to the Plaintiff, he was arrested at the hospital, the officers stopped his care (interfering with his right to medical care) and took him to jail.  Dkt. 86 at 13. The Plaintiff was found guilty of violating the terms of his probation for this episode.  Dkt. 86 at 18.

On February 15, 2019, the Plaintiff was booked at the Pierce County Jail for violating the no contact order.  Dkt. 57 at 2.  He was put on [Global Positioning System ("GPS")] monitoring when he was released on March 1, 2019.  *Id.*  On March 18, 2019, the Pierce County Sheriff's Office arrested the Plaintiff for violation of the no-contact order with his wife.  *Id.*

CCO Nathaniel Jordan, who is not named as a defendant here, states that he helped COO Kekoa-Oshiro supervise the Plaintiff.  Dkt. 59.  CCO Jordan states that in March of 2019, the Plaintiff requested travel passes to attend court hearings in King County.  Dkt. 59 at 1.  When CCO Jordan asked for proof of the hearings, the Plaintiff texted a screen shot of a website.  *Id.* at 2.  CCO Jordan directed the Plaintiff to report the next day because the terms of his supervision prohibited him from accessing the internet and when he did, CCO Jordan arrested him.  *Id.*  CCO Jordan states that a later search of the Plaintiff's hotel room revealed a March 2, 2019 receipt for a new iPhone.  *Id.*  As a result, was found guilty of violating the terms of his supervision and the Plaintiff was sanctioned with 13 days of confinement.  *Id.*

1      Defendant CCO David Sathers also assisted CCO Kekoa-Oshiro in supervising the

2    Plaintiff.  Dkt. 60.  He states that on March 25, 2019, he received information that the Plaintiff

3    contacted his wife by phone in violation of the no contact order.  Dkt. 60 at 1-2.  CCO Sathers

4    states that the Plaintiff was told to report to the office and directed to submit to a search of his

5    person and car for the phone used to make the contact.  Dkt. 60 at 2.  The Plaintiff asserts that

6    CCO Sathers and others broke the lock on the trunk of his car during the course of the search.

7    Dkt. 86 at 13.  The Plaintiff contends that he did not have a key to it and they used a screw driver

8    to force it open.  *Id.*  According to CCO Sather, no phone was found but, they found a taser in

9    the trunk of the Plaintiff's car.  Dkt. 60 at 2.

10      CCO Sathers was not certain at that time whether the taser was considered a deadly

11    weapon (the Plaintiff's possession of a deadly weapons constituted a violation of the conditions

12    of his supervision).  *Id.*  The Plaintiff was released, but his request to travel to Franklin County

13    was denied.  *Id.*  The next day, after CCO Sather determined that possession of the taser without

14    training was in violation of his supervision conditions, the Plaintiff was arrested.  *Id.*  The

15    Plaintiff contends that Sather took these actions in a conspiracy with others in order to prevent

16    him from attending court in Franklin County.  Dkt. 66-1 at 19.  The Plaintiff further denies ever

17    having a taser and asserts that he was not found guilty of this violation, but contends that as a

18    result of his arrest, he was transported to several different jails and forced to repost bond in other

19    counties.  *Id.*

20      According to CCO Kekoa-Oshiro, in April of 2019, she learned that there were felony

21    warrants for the Plaintiff's arrest in both Franklin and Pierce Counties for violations of no

22    contact orders.  *Id.*  The Plaintiff was arrested pursuant to both warrants by April 16, 2019.  *Id.*

23

24

1    After his arrest in Pierce County, the Pierce County Superior Court issued an order restricting the

2    Plaintiff's travel to King, Pierce, Thurston, Kitsap, Benton and Franklin Counties. *Id.*

3        The Plaintiff contends that on April 29, 2019, CCO Kekoa-Oshiro, Nelson and Sathers

4    knowingly ordered him to leave King County to return to Snohomish County, contrary to the

5    Pierce County Superior Court's order that he not travel outside King, Pierce, Thurston, Kitsap,

6    Benton and Franklin. Dkt. 66-1. The Plaintiff was arrested by CCO Kekoa-Oshiro on April 29,

7    2019 for failing to leave King County when directed by DOC to do so. Dkt 60 at 3. The

8    Plaintiff asserts that CCO Kekoa-Oshiro and others conspired and then arrested him for being in

9    King County but she knew a court ordered him there. Dkt. 66-1 at 18. (He maintains that an

10   appeals board later overturned that arrest). *Id.*

11       On May 14, 2019, CCO Kekoa-Oshiro sent a letter to the Pierce County Superior Court

12   asking that his bail conditions be modified to reflect the conditions imposed by his supervised

13   release on the 2017 King County conviction. Dkt. 60. The Plaintiff maintains that CCO Kekoa-

14   Oshiro lied to the Pierce County Superior Court in her May 14, 2019 letter to it. Dkt. 66-1 at 17.

15       CCO Kekoa-Oshiro states that in May of 2019, she granted the Plaintiff's request to

16   travel to Pierce County to attend a hearing on the condition that he make no deviations in his

17   travels and have no contacts with his victims. Dkt. 57 at 3. His GPS monitor showed that he

18   stopped at an unapproved address so CCO Kekoa-Oshiro arrested him the next day for violating

19   his travel permit. Dkt. 57 at 3. The Plaintiff contends that his arrest was unjustified because he

20   stopped for a flat tire. Dkt. 66-1.

21       The Plaintiff asserts that he was "brought in on baseless probation violations meant to

22   interfere with their processing of property through divorce, causing them to miss numerous court

23   dates and forfeit the costs and fees of numerous bond proceedings." Dkt. 66-1 at 6. He contends

24

1    that these "baseless probation violations were later found to be baseless and dismissed." *Id.*  The

2    Plaintiff asserts that he was unlawfully arrested and convicted on numerous occasions.  *Id.* at 8.

3    The Plaintiff claims that he was not found guilty of all the probation violations for which CCO

4    Kekoa-Oshiro arrested him.  Dkt. 66-1 at 17.  He claims he spent 30 days in custody in

5    connection with these various probation violations and that caused him to miss several court

6    appearances.  *Id.*  He asserts that when he was found to have violated the conditions of his

7    supervision, he had been improperly entrapped.  Dkt. 86 at 12.

8          The Plaintiff states that CCO Kekoa-Oshiro pointed her gun at him in a "joking manner"

9    (Dkt. 66-1); she denies ever pointing her gun at the Plaintiff (Dkt. 57 at 3).  He also claims that

10   she took money and a Rolex watch from him.  Dkt. 66-1 at 18.

11                               **II.   <u>DISCUSSION</u>**

12   **A.  SUMMARY JUDGMENT STANDARD**

13         Summary judgment is proper only if the pleadings, the discovery and disclosure materials

14   on file, and any affidavits show that there is no genuine issue as to any material fact and that the

15   movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is

16   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

17   showing on an essential element of a claim in the case on which the nonmoving party has the

18   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

19   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

20   for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

21   (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

22   metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is

23   sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

24

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10

the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986);

*T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court

must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

which is a preponderance of the evidence in most civil cases.  *Anderson,* 477 U.S. at 254; *T.W.*

*Elect.,* 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

nonmoving party only when the facts specifically attested by that party contradict facts

specifically attested by the moving party.  The nonmoving party may not merely state that it will

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

to support the claim.  *T.W. Elect.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at

255).  Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts"

will not be "presumed."  *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888–89 (1990).

**B.  FEDERAL CLAIMS ASSERTED AGAINST DOC AND INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES AND STATE CLAIMS ASSERTED AGAINST DOC**

The Plaintiff asserts various constitutional claims against DOC pursuant to 42 U.S.C. §

1983, he refers to the federal statute HIPPA (accordingly, to the extent he intends to make a

claim under that statute it should be addressed), and the Plaintiff makes state law claims against

the DOC.  Dkt. 9.  While the Amended Complaint seeks "injunctive relief as necessary," he does

not make a specific claim for prospective injunctive relief.

1.  <u>Federal § 1983 Claims Asserted Against DOC and Individual Defendants in their Official Capacities</u>

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the

conduct complained of was committed by a person acting under color of law, and that (2) the

conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(*overruled on other grounds*);

*Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an

alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350,

1354 (9th Cir. 1985). States, state agencies, and officials acting in their official capacities are not

"persons" and so are not subject to a suit for monetary relief under § 1983. *Will v. Mich. Dep't of

State Police*, 491 U.S. 58, 71 (1989)(holding that "neither a State nor its officials acting in their

official capacities are 'persons' under § 1983").

The Defendants' summary judgment motion to dismiss all federal constitutional claims

asserted against the DOC and all individual Defendants in their official capacities (Dkt. 56)

should be granted.  There are no issues of fact and these Defendants are entitled to a judgment as

a matter of law.  The Plaintiff conflates § 1983 claims against municipalities and counties,

permitted under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978)*, with the

claims he is asserting against DOC.  The § 1983 claims asserted against DOC and the

individually named Defendants in their official capacities should be dismissed with prejudice.

2.  HIPPA Claim

HIPPA does not provide a private right of action.  *Webb v. Smart Document Solutions,

LLC,* 499 F.3d 1078, 1081 (9th Cir. 2007).  To the extent that the Plaintiff asserts a HIPPA claim

against DOC (or any other party or person) his HIPPA claim should be dismissed with prejudice.

3.  State Law Claims Asserted Against DOC

The Eleventh Amendment to the United States Constitution bars a person from suing a

state in federal court without the state's consent.  *See Seminole Tribe of Florida v. Florida* 116

S.Ct. 1114, 1131 (1996); *Natural Resources Defense Council v. California Dep't of

*Transportation*, 96 F.3d 420, 421  (9th Cir. 1996).  Eleventh Amendment immunity extends to

state agencies.  *Pennhurst State Sch. & Hosp. v. Holdeman*, 465 U.S. 89, 101-102 (1984).

The Plaintiff has not shown that the DOC may be sued in federal court, including for

state law claims.  All state law claims against DOC should be dismissed without prejudice.

### 4.   Conclusion on Claims Asserted Against the DOC and Defendants in their Official Capacities

All federal claims asserted against DOC, and the individual Defendants sued in their

official capacities, should be dismissed with prejudice.  DOC is not a "person" for purposes of

§1983 and there is no private right of action under HIPPA.  All state law claims asserted against

the DOC should be dismissed without prejudice as barred by the Eleventh Amendment.

## C.  FEDERAL CONSTITUTIONAL CLAIMS AGAINST INDIVIDUAL DEFENDANTS PURSUANT TO § 1983

As stated above, in order to state a claim under 42 U.S.C. § 1983, a complaint must allege

that (1) the conduct complained of was committed by a person acting under color of law, and that

(2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution

or laws of the United States.  *Parratt* at 535.  To state a civil rights claim, a plaintiff must set

forth the specific factual bases upon which he or she claims that each defendant is liable.  *Aldabe*

*v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of official

participation in a civil rights violations are not sufficient to support a claim under § 1983.  *Ivey v.*

*Bd. of Regents*, 673 F.2d 266 (9th Cir. 1982).

Defendants in a Section 1983 action are entitled to qualified immunity from damages for

civil liability if their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815

(2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In analyzing a qualified

immunity defense, the Court must determine: (1) whether a constitutional right would have been

violated on the facts alleged, taken in the light most favorable to the party asserting the injury;

and (2) whether the right was clearly established when viewed in the specific context of the case.

*Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). While the sequence set forth in *Saucier* is often

appropriate, it is no longer regarded as mandatory. *Pearson* at 811.

### Violation of Constitutional Right?

The Amended Complaint makes claims under the Fourteenth Amendment and refers to

the Fourth and Fifth Amendments but does not specify which of the Defendants he is making

which claim against.  His responses do not offer any clarification.

As appears to be relevant here, the Fourteenth Amendment's due process clause provides

that no state shall "deprive any person of life, liberty, or property without due process of law"

and that no state shall deny a person "the equal protection of the laws."  The Fourth Amendment

prohibits "unreasonable searches and seizures."  The Fifth Amendment includes a due process

clause that prohibits states from depriving people of "life, liberty, or property, without the due

process of law."

The parties have argued their positions on the motions by party, so the Court will use that

form of organization.

1.   § 1983 Claims Against Defendants Sinclair, Armbruster, and Penrose

The Plaintiff names as Defendants former Secretary of DOC Stephen Sinclair and DOC

Assistant Secretary Danielle Armbruster.  Dkt. 9.  While the Amended Complaint also names a

"Gwin Pensrose," the DOC states that it does not have an employee by that name but indicates

that Gina Penrose was the Coyote Ridge Corrections Center Associate Superintendent while the

1   Plaintiff was housed there.  Dkt. 56.  For purposes of this motion, it will be assumed that the

2   Plaintiff intended to name Gina Penrose as a defendant as well.

3         The Plaintiff's federal constitutional claims asserted against Defendants Sinclair,

4   Armbruster and Penrose should be dismissed.  He has failed to set forth the specific factual bases

5   upon which he claims that each Defendant is liable for any constitutional violation.  *Aldabe* at

6   1092.  While he argues that the DOC policy against allowing him to sign the contract to close the

7   house when he wished violated his right to counsel, he fails to point to any authority to support

8   his contention.  The Plaintiff further contends that he filed a grievance with Sinclair that was not

9   answered and complains of a denial of a grievance appeal by Armbruster.  The Plaintiff fails to

10  demonstrate that those actions amounted to a violation of any of his constitutional rights.

11        The Plaintiff generally asserts that Defendants Sinclair, Armbruster, and Penrose failed to

12  train their employees.  The Plaintiff offers no evidentiary support for this contention.  Further, he

13  does not offer any evidence that a failure to train any of the DOC employees resulted in a

14  constitutional violation.  His assertions against Defendants Sinclair, Armbruster, and Penrose

15  amount to an attempt to hold them vicariously liable for the actions of their subordinates, which

16  is not permitted for claims under § 1983.  *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385

17  (1989).  The Defendants' motion for summary judgment on the § 1983 claims asserted against

18  Defendants Sinclair, Armbruster and Penrose should be granted and those claims dismissed with

19  prejudice.

20              2.   § 1983 Claims Asserted Against Defendant Partida based on Attorney Visit

21        The Plaintiff maintains that Defendant Partida violated his "attorney client privilege

22  rights" when he sat in on the attorney client conference with lawyer Patrick McBurney, who was

23  helping him purchase a house.  The Plaintiff contends that he was damaged by Defendant

24

Partida's decision to require the lawyer to return a few days later after DOC approved the Plaintiff's signing the house closing documents.

The Plaintiff fails to point to any authority that the constitution provides a right for an inmate to have a lawyer visit him on a civil matter without preapproval or supervision.  To the extent he is now attempting to assert Defendant Partida' actions (or other Defendants or non-party individuals) violated other of his constitutional rights regarding this attorney visit, his arguments are unavailing.  First, he failed to make any of these claims in his Amended Complaint so the Defendants had no notice of these claims.  Second, the Plaintiff appears to confuse his constitutional right to counsel in criminal matters under the Sixth Amendment with the legal issues related to his house closing, which is a civil matter.  Third, to the extent that the Plaintiff now argues in his responses that his "constitutional right to contract" was infringed, his assertions are equally unhelpful.  "The Constitution protects freedom of contract only by limiting the states' power to modify or affect contracts already formed."  *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987).  The Plaintiff fails to demonstrate that this or any other constitutional provision applied to Defendants' actions in connection with the lawyer's visit.

> 3.  § 1983 Claims Against Nelson, Kinne, and Partida Related to the Timing of his Early Release and the Denial of his Request to be Released to his Pierce County, Washington House at the Time of His Early Release

The Plaintiff's Amended Complaint asserts that his Fourteenth Amendment rights were violated when he was released at the earliest possible date and not permitted to move into his Pierce County, Washington house at the time of his early release and was forced to move to Snohomish County instead.  Dkt. 9.  The Plaintiff contends that this caused him to be forced to sell the Pierce County, Washington home, declare bankruptcy and breach the terms of the bankruptcy agreement.

1    This claim should be dismissed. The Plaintiff again fails to point to any law to support his

2    theory that the Defendants' decision to delay his early release and deny his request to move to

3    his Pierce County, Washington home while on supervised release violated his constitutional

4    rights.  In his responses, the Plaintiff opines at length what rights he believes the constitution

5    secures.  Many of his suppositions are without legal support.  Further, while the Plaintiff asserts

6    that the Defendants manipulated his ex-wife into saying that she did not feel safe having him in

7    the home with her, these facts, taken as true, still do not amount to a constitutional violation.

8    Plaintiff has failed to point to authority which indicates that the Defendants' actions regarding

9    when and where he was released while on supervised release violated his constitutional rights.

10              4.   § 1983 Claims Against Kekoa-Oshiro, Nelson, Sathers, and Kinne

11          To the extent that the Plaintiff contends that Kekoa-Oshiro, Nelson, Sathers and Kinne

12   violated his Fourteenth or Fifth Amendment rights, he fails to point to any theory of recovery

13   that is supported by law.  His general contentions of conspiracy to keep him from appearing in

14   civil and criminal courts are not sufficient proof of conspiracy.

15          To the extent that the Plaintiff maintains that his Fourth Amendment rights against

16   unreasonable seizures were violated when he was arrested on allegations of probation violations,

17   his claim should be dismissed.  He has failed to point to evidence to support his contentions.

18   Moreover, while he claims that he was not found guilt of a majority of the probation violations,

19   he fails to offer any evidence to support his assertions.

20          To the extent that he asserts that his Fourth Amendment right against unreasonable

21   searches was violated when COO Sathers and others forced the trunk of his car open to search it,

22   his claim should be dismissed.

23

24

1    As a general rule, the government must obtain a warrant supported by probable cause in

2    order to conduct a search, but there are exceptions to this requirement.  *Mitchell v. Wisconsin,*

3    139 S. Ct. 2525, 2543 (2019).  One exception to the Fourth Amendment warrant requirement is

4    court ordered searches as conditions of supervised release.  *See U.S. v. Cervantes,* 859 F.3d

5    1175, 1184 (9th 2017) (upholding suspicion-less search as a condition of supervised release).

6    The Plaintiff's conditions of supervision included submitting to searches if there was "reasonable

7    cause" on the part of DOC that the Plaintiff violated other conditions of supervision.  Dkt. 57 at

8    7.  The Plaintiff's conditions of supervision included not violating no contact orders.  *Id*.

9    CCO Sathers states that on March 25, 2019, he received information that the Plaintiff

10   contacted his wife by phone in violation of the no contact order.  Dkt. 60 at 1-2.  He maintains

11   that he searched the Plaintiff and the Plaintiff's car to attempt to find the phone with which the

12   call was made.  *Id.*  The Plaintiff offers no grounds to conclude that CCO Sathers did not have

13   reasonable cause to believe that the Plaintiff violated the no contact order by phone.  The

14   Plaintiff had a history of doing so and had been arrested on multiple occasions for the same

15   conduct.  The Plaintiff's Fourth Amendment claim against CCO Sathers should be dismissed.

16       5.  <u>Conclusion on whether the Plaintiff established Issues of Fact on a</u>
             <u>Constitutional Violation Against the Individual Defendants</u>

17   Even taking facts in a light most favorable to him, the Plaintiff has failed to demonstrate

18   that the individually named Defendants violated his constitutional rights.  His claims fail on the

19   first *Saucier* step.

20                              **Clearly Established?**

21   The individual Defendants assert that they are entitled to qualified immunity defense.  As

22   to the second *Saucier* step, the Court must determine whether the constitutional rights asserted

23   were "clearly established when viewed in the specific context of the case." *Saucier* at 2156. For

24

purposes of qualified immunity, "[a] right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021)(internal quotation marks omitted). While case law directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 7-8. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The Plaintiff has failed to show that the constitutional rights asserted here were clearly established.  He relies on broad statements of "property rights" and "search and seizure" rights without any reference to the specific context of the situation.  The individual Defendants are entitled to qualified immunity.

### D.  HIPPA CLAIMS AGAINST INDIVIDUAL DEFENDANTS

To the extent that the Plaintiff asserts HIPPA claims against the individual Defendants, the claim should be dismissed.  As stated above, there is no private right of action under HIPPA. *Webb* at 1081.

### E.  STATE LAW CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

Pursuant to 28 U.S.C. § 1367 (c), district courts may decline to exercise supplemental jurisdiction over a state law claims if:  (1) the claims raise novel or complex issues of state law, (2) the state claims substantially predominate over the claim which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367 (c), it is informed by the

1    values of economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc*., 114 F.3d

2    999, 1001 (9th Cir. 1997)(*internal citations omitted*).

3         Here, two of the four conditions in § 1367(c) are present.  All Plaintiff's federal claims

4    will be dismissed by this order.  Accordingly, this Court has "dismissed all claims over which it

5    has original jurisdiction," and so has discretion to decline to exercise supplemental jurisdiction

6    over the state law claims under § 1367(c)(3).  Moreover, the remaining state claims "raise novel

7    or complex issues of state law" under § 1367(c)(1).  These are issues for which the state court is

8    uniquely suited.  Because state courts have a strong interest in enforcing their own laws, *See*

9    *Carnegie-Mellon University v. Cohill,*484 U.S. 343, 352 (1988), the value of comity is served by

10   this Court declining jurisdiction.  Further, the values of economy, convenience, and fairness may

11   well be served by this Court's declining to exercise supplemental jurisdiction.  *See Acri* at 1001.

12        Accordingly, by January 20, 2023, the parties should be ordered to show cause, in

13   writing, if any they have, why the remaining state law claims should not be dismissed without

14   prejudice.  The Defendants' motion for summary judgment on the state law claims (Dkt. 56)

15   should be renoted for January 20, 2023.

16   **F.  CLAIMS AND PARTIES RAISED FOR THE FIRST TIME IN PLAINTIFF'S
     RESPONSES**

17        The Plaintiff's responses include several new parties, events, and claims some of which

18   are wholly unrelated to the events that form the basis of the Amended Complaint.  To the extent

19   that the Plaintiff's responses refer to new parties, events and claims, those references to do

20   provide a basis to deny the motion for summary judgment.  Moreover, the Plaintiff has not

21   moved to amend his Amended Complaint.  (There is no showing that such an amendment would

22   not be futile.  There is no showing that amendment has not been unduly delayed.)  Trial was set

23   to begin in this case on February 27, 2023, and amendments are not timely.

24

1

### III.   ORDER

2    Therefore, it is hereby **ORDERED** that:

3    • The Plaintiff's Motion for Leave to File Surreply (Dkt. 90) **IS GRANTED**;

4    • The Defendants' Motion for Summary Judgment (Dkt. 56) **IS GRANTED** as to

5       the federal claims and **RENOTED** to **January 20, 2023** as to the state law claims

6       for responses to the order to show cause to be considered; and

7    • By **January 20, 2023**, the parties **ARE ORDERED TO SHOW CAUSE**, in

8       writing, if any they have, why the remaining state law claims should not be

9       dismissed without prejudice pursuant to § 1367(c).

10   The Clerk is directed to send uncertified copies of this Order to all counsel of record and

11   to any party appearing pro se at said party's last known address.

12       Dated this 9th day of January, 2023.

13

14

15   ROBERT J. BRYAN
     United States District Judge

16

17

18

19

20

21

22

23

24

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 21